CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 15 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DENNIS D. SEAMSTER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 4:21-cv-00021 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TY ALLEN TAYLOR, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Dennis D. Seamster brings this negligence action arising from a motor vehicle accident in which Defendant Ty Allen Taylor, while operating a tractor-trailer owned by his employer and co-Defendant Blount International, Inc. ("Blount") (collectively, "Defendants"), collided with the rear of Seamster's farm tractor. On June 15, the court resolved several motions *in limine* concerning the testimony of four experts in this case. (ECF Nos. 67, 68.) Having resolved those motions, this matter is now before the court on Defendants' motion for summary judgment. (ECF No. 37.) As explained below, the court will deny Defendants' motion.

## I.   BACKGROUND

On December 2, 2019, Seamster was driving a 1978 John Deere 4440 farm tractor on 360 East, a four-lane divided highway in Halifax County, Virginia. (ECF No. 49-1, at 3, 65–69.) Seamster was in route to his friend's farm to pick up two bales of hay to feed the cattle he tended on his mother's farm. (Dep. of Dennis Seamster 52:13–54:13, 62:17–24, Aug. 31, 2021 [ECF No. 38-1].) Seamster ordinarily drove a larger semi-truck to collect hay bales for the farm but, because he only needed two bales that evening, he opted to drive his tractor. (*Id.*

at 60:17–63:14.) He does not recall ever driving his tractor to that farm. (*See id.* at 60:17–23, 62:17–22.) Seamster's route to his friend's farm required him to drive a little over a mile on the highway. (*Id.* at 60:14–16.) He intended to drive about a mile along the highway (which has a posted speed limit of 60 miles per hour), make a U-turn at a cut-through, and travel another several hundred yards before making a right turn into his friend's farm. (*Id.* at 53:5–17, 60:14–16.)

At around 5:25 p.m., Seamster was driving approximately 15 miles per hour in the left lane, preparing to turn in about 1,000 feet. (*See* ECF No. 49-1, at 65; Seamster Dep. at 65:8–17; Dep. of James Whelan 31:9–21, Jan. 4, 2022 [ECF No. 38-4].) It was dusk and "still light out, but . . . getting dark." (*See* Seamster Dep. at 54:17–24.) Taylor was driving his tractor-trailer on 360 East at approximately 60 miles per hour when he overtook and collided with the rear of Seamster's tractor. (*See* ECF No. 49-1, at 65.)

According to Seamster, prior to driving on the highway, he turned the tractor's light switch to the "H" position, which should have illuminated the tractor's two front warning lamps, two rear warning lamps, two headlights, and two taillights. (Seamster Dep. at 81:12–82:9.) The light switch recovered at the scene of the accident was indeed turned to the "H" position. (ECF No. 49-1, at 55.) As required by law, the tractor displayed a slow-moving vehicle ("SMV") emblem. (*See id.*) Only a small fragment of the SMV emblem survived the crash:



(*See id.*) Photographs taken at the scene of the accident reveal that the front-left side of the tractor-trailer collided with Seamster's tractor. The force of the collision separated the cab of the tractor from its base and splintered the tractor into many pieces.





(*Id.* at 25–27.)

On April 20, 2021, Seamster filed suit in the Circuit Court of Halifax County against Taylor and his employer, Blount (the owner of the tractor-trailer), alleging negligence and

- 3 -

seeking compensatory damages for personal injuries that he sustained in the accident. (Compl. ¶¶ 14–20 [ECF No. 1-1].) Defendants removed the case to this court. (*See* ECF No. 1.) After the close of discovery, the parties filed several motions *in limine* related to expert testimony, and Defendants filed the present motion for summary judgment. (ECF Nos. 31, 33, 35, 37, 48, 61.) In addition to reviewing the relevant portions of the record and the parties' briefing on these motions, the court held a hearing on June 7, 2022. The court ruled on the motions *in limine* on June 15, 2022. (ECF Nos. 67, 68.) Having resolved those motions and limited the admissible expert testimony in this case, the court now considers the Defendants' motion for summary judgment. For the reasons explained below, the court will deny that motion.

## II.  STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and

establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

### III.   ANALYSIS

Defendants make three arguments in support of their motion for summary judgment: (1) that Seamster has failed to demonstrate that a genuine issue of material fact exists as to whether Taylor acted negligently; (2) that Seamster cannot recover against Defendants because, by driving in the left lane, he was negligent per se; and (3) that Seamster cannot recover against Defendants because he was contributorily negligent. The court will address each argument in turn.

### 1. Defendants' Negligence

Defendants first argue that Seamster has not put forward sufficient evidence to demonstrate a genuine issue of material fact with respect to whether Taylor acted negligently in his operation of the tractor-trailer.

Virginia law governs this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999) (citing *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 957 (Va. 1981)). "The Virginia Supreme Court has established that 'negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done under existing circumstances.'" *Souleyrette v. Conaway*, 8 F. Supp. 2d 554, 558 (W.D. Va. 1998) (quoting *Moore v. Va. Transit Co.*, 50 S.E.2d 268, 271 (Va. 1948)). Defendants contend that Seamster cannot demonstrate that Taylor[1] breached any duty of care owed to him *or* that such a breach proximately caused his injuries.

### A. Breach of Duty

Virginia recognizes a "broad duty not to injure others by acts of omission or commission." *Quisenberry v. Huntington Ingalls, Inc.*, 818 S.E.2d 805, 810 (Va. 2018) (cleaned up). Seamster alleges that Taylor breached that duty by failing to (1) operate the tractor-trailer with

---

[1] Blount, as Taylor's employer, would be liable for any of Taylor's tortious acts committed while he was "performing his employer's business and acting within the scope of his employment" at the time. *See Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018).

reasonable care and due regard for others; (2) keep a proper lookout; (3) keep the tractor-trailer under proper control; (4) give full time and attention to the operation of the tractor-trailer; (5) operate the tractor-trailer in a safe manner; and (6) operate the tractor-trailer at a reasonable speed under the existing circumstances. (Compl. ¶ 16.) Defendants argue that the crux of Seamster's case is his allegation that Taylor failed to keep a proper lookout, but that Seamster has not put forth sufficient facts to support those allegations. (Defs.' Reply at 4 [ECF No. 60].)

At least two genuine disputes of material fact[2] compel the court to deny Defendants' motion for summary judgment: (1) how dark it was at the time of the accident (and therefore how easily Taylor could observe Seamster's tractor) and (2) the visibility of the tractor's SMV emblem. Both of these questions of fact bear directly on the ultimate issue of whether Seamster's tractor was visible from a certain distance and, therefore, whether Taylor breached his duty to keep a proper lookout and operate his tractor-trailer with reasonable care.[3]

First, Defendants argue that there is no genuine dispute that, at the time of the accident, it was "getting dark" outside. (Defs.' Reply at 8.) And, because of this apparent undisputed fact, Defendants spend most of their brief discussing the deficiencies in the tractor's taillights

---

[2] Obviously, in reaching its conclusion, the court has not considered those expert opinions it struck in its prior rulings. (*See generally* ECF Nos. 67, 68.)

[3] The parties devote considerable attention in their briefing to discussing whether the tractor's taillights were illuminated at the time of the accident. In its prior ruling, the court excluded portions of the testimony of James Whelan, Plaintiff's proposed expert witness. Specifically, the court excluded Whelan's opinion that the physical evidence did not indicate the tractor's taillights were off at the time of the accident. (*See* ECF No. 67, at 21–24.) Without this testimony, Seamster is limited only to testimony that confirms the light *switch* was turned on for his taillights. (*See* Seamster Dep. at 81:12–82:9.) Because the court finds that other genuine disputes of material fact preclude summary judgment, the court sees no need address the operability of the taillights any further.

and SMV emblem. But, in the light most favorable to Seamster, he described the light conditions at the time of the accident as "still light out, but . . . getting dark." (Seamster Dep. at 54:17–22.) For his part, Taylor recalls very little about the accident. (*See* Dep. of Ty Allen Taylor at 9:24–11:12, Aug. 5, 2021 [ECF No. 52-8] (affirming that he cannot remember the accident and he does not know why he cannot remember).) But he nonetheless testified that he knew he was using his headlights at the time, in part "[b]ecause it was dark out." (Taylor Dep. at 25:7–15.)

Other witnesses corroborate Seamster's account of the lighting conditions at the time of the accident and shortly after it. For example, Jason Forlines, a friend of Seamster who arrived on the scene just after the accident, testified that when he was driving over to the site of the accident it was not "what [he] would call like dusk yet" and that it was about 20 to 30 minutes before dark. (Dep. of Jason Forlines 17:21–18:2, Oct. 27, 2021 [ECF No. 52-2].) Forlines testified that it was light enough out that he could see the remains of both the tractor and tractor-trailer when he pulled up to the accident without shining his headlights. (*Id.* at 37:13–25.) But at the same time, Forlines could not recall if his headlights were on that evening, and he believes they are automatic. (*Id.* at 37:7–38:5.)

Trooper K.R. Martin, an officer who responded to the accident, corroborates Seamster and Forlines's description. He said it was "getting to be like low light" when he received the call about the accident. (Dep. of Trooper K.R. Martin at 8:17–20, Oct. 27, 2021 [ECF No. 52-3].)

Both parties also offer videos taken at the scene of the accident on the two-year anniversary, at the same time as the crash, as evidence. Seamster's video is taken from behind

the wheel of a vehicle with its headlights shining. (*See* ECF No. 52-4.) Defendants' video is taken on the side of the highway while several cars drive along the road.[4] (*See* ECF No. 60-9.) Overall, these videos capture noticeably different light and visibility levels.

Finally, Seamster testified that, just prior to the accident, two cars had safely passed him on his right. (Seamster Dep. at 78:5–15.) It is possible that these cars were initially traveling in the right lane such that the drivers' ability to observe Seamster's tractor did not affect their ability to safely pass. But at the same time, a reasonable juror could interpret this testimony to show at least that a vehicle could safely maneuver around the tractor, and it may suggest that oncoming traffic could see the tractor traveling in the left lane.[5]

The testimony of these witnesses and the video evidence, taken in the light most favorable to Seamster, create a genuine issue of material fact as to how light it was at the time of the accident. If the light level at the time was sufficient to allow a reasonably prudent driver to observe the tractor in enough time to prevent the accident, then a jury could find Defendants liable for the accident.

Second, Defendants contend that Seamster has not demonstrated a genuine issue of material fact as to whether the SMV emblem was in good condition, visible, and reflective. Seamster stated that he had never replaced the SMV emblem on the tractor. (Seamster Dep.

---

[4] The court granted Seamster's motion to strike the portions of the revised affidavit of Dr. Chris Monk that explain that his team adjusted the light levels on their camera to reflect the surrounding light levels more accurately, as well as the portions that critique the reliability of Seamster's video. (*See* ECF No. 67, at 12–14.)

[5] Both the tractor and tractor-trailer were traveling in the left land at the time of the accident. While Seamster has explained he was preparing to make a left-hand turn, (Seamster Dep. at 65:12–17), Taylor has not explained why he was traveling in the left lane prior to the accident, (Taylor Dep. at 28:15–19). For example, Taylor has not stated that he was preparing to make a left turn or that he was passing a vehicle in the right lane. The absence of any explanation creates a genuine dispute of material fact as to whether Taylor failed to operate his tractor-trailer with reasonable care under the circumstances by driving in the left lane. (Seamster Dep.

at 57:16–58:6.) At the same time, Seamster did not start personally maintaining the tractor until "either 2015 or 2016," after his father passed away. (Seamster Dep. at 49:18–50:8.) Ralph Page Seamster ("Page"), Seamster's uncle, stated that "many times before the day of the crash," he observed that the SMV emblem "was intact and in good working condition." (Aff. of Ralph Page Seamster ¶ 4, Feb. 3, 2022 [ECF No. 52-7].) Page described the reflective properties of the SMV emblem and noted that the emblem would reflect in his headlights and was "clearly visible" as he approached the farm from approximately 340 feet away. (*Id.* ¶¶ 6–7.)

Defendants focus primarily on Seamster's lack of expert evidence on the effectiveness of the SMV emblem as it relates to visibility. The court previously granted the parties' respective motions to exclude portions of expert testimony in which the experts opined about the emblem's condition. (*See* ECF No. 67, at 16–18, 26.) No expert on either side conducted any testing on the portion of the SMV emblem that remained after the accident, and the court therefore found those opinions unreliable. (*See id.*)

But this lack of expert evidence does not negate the genuine dispute of material fact established by the lay witness testimony in this case. Lay witnesses may offer an opinion that is "rationally based on [their] perception," provided that it is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Seamster's and Page's descriptions of the condition of the SMV emblem fall into this category, and the jury may give their testimony whatever weight it sees fit to determine if the emblem was visible and would have alerted a reasonably prudent driver to the slow-moving tractor.

**B. Proximate Causation**

Defendants contend that, even if Taylor breached a duty, Seamster cannot show that any such breach proximately caused the accident because Seamster's own "actions in operating a slow-moving tractor in the left lane of [the highway] in low light conditions caused the accident to be unavoidable." (Defs.' Br. Supp. Mot. Summ. J. at 13 [ECF No. 38].) In Defendants' view, Taylor would not have been able to perceive the tractor as a hazard in enough time to avoid the accident. (*Id.*)

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Kellerman v. McDonough*, 684 S.E.2d 786, 793 (Va. 2009). "Virginia law requires 'the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess[,] or random judgment, he cannot recover.'" *Leary v. Delarosa*, No. 5:16-cv-43, 2017 WL 2692652, at *4 (W.D. Va. June 21, 2017) (quoting *Hoffner v. Kreh*, 313 S.E.2d 656, 658 (Va. 1984)). But, "[o]nce the plaintiff describes the basic events surrounding an accident—the 'why and how' it occurred—then disputes over remaining facts, breach of duty, and causation do not require the jury to engage in conjecture, guess[,] or random judgment." *See id.* at *5 (internal quotation marks omitted).

In support of their proximate cause argument, Defendants compare Seamster's expert, James Whelan's opinion in this case to the opinion he offered in an unrelated case, *Pakhnyuk v. Orellano*. *See* Decl. of James D. Whelan, *Pakhnyuk v. Orellano*, No. 5:18-cv-00003, at ECF No.

46-3 (W.D. Va. Oct. 18, 2018), *available at* 2018 WL 8664349.[6] In *Pakhnyuk*, the defendant driver collided with "a truck hauling an ATV being towed by a school bus in complete darkness on Interstate 81 without a[n] SMV emblem." (Pl.'s Br. Opp'n Mot. Summ. J. at 13 [ECF No. 52].) Whelan analyzed the defendant driver's "looming threshold" by calculating both the driver's visual expansion rate and his perception-response time. (*See* Defs.' Br. Supp. Mot. Summ. J. at 16; ECF No. 38-3, at 18 (describing looming).) Stated more simply, when a driver approaches a slower vehicle from behind, at a certain point, called the "looming threshold," the driver realizes he is approaching too rapidly and must take action to avoid a collision. (*See* ECF No. 38-3, at 18.) Based on the looming threshold, Whelan concluded that the defendant driver in *Pakhnyuk* would not have had sufficient time to avoid the collision. (*See* Defs.' Br. Supp. Mot. Summ. J. at 16.)

Defendants fault Whelan for not analyzing the looming threshold in this case. But in his deposition, Whelan testified that he did not "believe this is a looming case" because the tractor displayed an SMV emblem which itself communicates that the vehicle is moving slowly. (Whelan Dep. at 109:9–111:7.)

The court has already denied Defendants' motion to exclude Whelan's testimony in its entirety based on his prior opinion in *Pakhnyuk*.[7] (*See* ECF No. 67, at 26–27.) Similarly here,

---

[6] In support of this motion, Defendants submitted an affidavit by their expert, Tyler Black, that discussed Whelan's opinions in *Pakhnyuk* and offered various opinions about how Whelan would have reached different conclusions if he had applied that methodology in this case. (ECF No. 38-7.) The court granted Seamster's motion to strike those paragraphs of Black's affidavit, and it will not consider them in this analysis. (*See* ECF No. 67, at 10–11.)

[7] But the court granted in part Defendants' motion to exclude portions of Whelan's testimony, which substantially narrows the scope of expert opinions Whelan will be permitted to offer. (*See* ECF No. 67, at 21–28.)

Whelan's different approaches in each case is a proper subject of cross-examination, but not grounds for excluding his opinion, let alone granting summary judgment. At the summary judgment stage, the court "must not weigh evidence or make credibility determinations," *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015), and Defendants' motion does no more than ask the court to weigh its expert more heavily than Seamster's and grant summary judgment on that basis.

For the foregoing reasons, the court finds that genuine issues of material fact as to the ultimate question of Defendants' negligence preclude entry of summary judgment in their favor.

**2. Negligence Per Se**

Under Virginia law, a party seeking to establish negligence per se must show: (1) that the defendant violated a statute that was enacted for public safety; (2) that the plaintiff belongs to the class of persons for whose benefit the statute was designed to protect; (3) that the harm that occurred was the type the statute was designed to protect; and (4) that the statutory violation was a proximate cause of his injury. *Benedict v. Hankook Tire Co.*, 286 F. Supp. 3d 785, 797 (E.D. Va. 2018) (citing *Halterman v. Radisson Hotel Corp.*, 523 S.E.2d 823, 825 (Va. 2000)). Defendants contend that Seamster was negligent per se for operating his tractor in the left lane, allegedly in violation of Virginia Code § 46.2-804. That code section states that:

> Any vehicle proceeding at less than the normal speed of traffic at the time . . . shall be driven in the lane nearest the right edge or right curb of the highway when such lane is available for travel except when overtaking and passing another vehicle *or in preparation for a left turn* . . . .

*Id.* § 46.2-804(1) (emphasis added). Seamster contests the assertion that he violated this statute because he was preparing to make a left turn at an upcoming U-turn cut-through. The court agrees.

Defendants argue that Seamster "still had a significant distance to travel" before his left turn. (*See* Defs.' Br. Supp. Mot. Summ. J. at 20.) But Defendants' expert, Tyler Black concludes that Seamster's turn was 1,680 feet from the location of the accident and traveling this distance would have only taken Seamster between 1 minute and 1 second to 1 minute and 35 seconds to reach. (Aff. of Tyler Black ¶¶ 13–17, Jan. 21, 2022 [ECF No. 38-7].) This is hardly a "significant" distance. Further, Seamster testified that he got in the left lane where he did because "that's the straightaway, and then the rest of the road is curvy and hilly." (Seamster Dep. at 88:3–14.) He stated that his father had always told him to change lanes at that point for safety purposes. (*Id.*)

Virginia Code § 46.2-804(1) does not include a definition of "in preparation for a left turn." In the absence of a definition, "the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 338 (Va. 1998). The plain meaning of "preparation" is "the action or process of making something ready for use or service or of getting ready for some occasion, test, or duty." *Preparation*, Merriam-Webster, https://merriam-webster.com/dictionary/preparation (last visited June 15, 2022).

Based on these facts and the plain meaning of "preparation," the court cannot conclude, as a matter of law, that Seamster moving into the left lane at what he determined was the safest place for him to do so was not "preparation for a left turn" under Virginia Code

§ 46.2-804(1). A jury should determine if the evidence establishes that Seamster was preparing to make a left turn and therefore lawfully operating his tractor in the left lane. Accordingly, the court will deny Defendants' motion for summary judgment as it relates to whether Seamster acted negligently per se.

### 3. Contributory Negligence

Finally, Defendants argue that they are entitled to summary judgment because Seamster was contributorily negligent. In Virginia, contributory negligence is a complete defense to allegations of negligence. *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 405 n.6 (4th Cir. 2011) (citing *Ponirakis v. Choi*, 546 S.E.2d 707, 710 (Va. 2001)). "Contributory negligence is a defense that is based on the objective standard of whether a plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." *Ponirakis*, 546 S.E.2d at 710. "The essence of contributory negligence is carelessness." *Id.* at 711. Although contributory negligence is typically an issue for the jury, courts can resolve it when there is no genuine dispute as to any material fact. *See Turner v. Walmart Stores E., LP*, No. 4:20cv41, 2021 WL 1783256, at *6 (W.D. Va. May 5, 2021) (collecting cases).

Defendants contend that Seamster "created a hazard" by operating his tractor at a low speed in the left lane of a four-lane divided highway at dusk. (Defs.' Br. Supp. Mot. Summ. J. at 21.) Defendants point to Whelan's deposition testimony that the tractor created a "hazardous condition" on the highway because it is a slower moving vehicle. (Whelan Dep. at 44:4–17.) But, as Seamster's counsel astutely pointed out at the hearing on this motion, this conflates the term *hazard* with *negligence as a matter of law*. In fact, Whelan said in his deposition

that laws requiring certain drivers to display SMV emblems and other conspicuity[8] devices arise from the hazardous nature of driving a slow-moving vehicle on a highway. (*Id.*)

Ultimately, the same genuine issues of material fact that preclude the court from concluding that Defendants were not negligent as a matter of law preclude a finding that Seamster's actions constituted contributory negligence. The record contains a genuine dispute about the overall light level at the time of the accident and whether the tractor displayed a visible SMV emblem. If the light conditions at the time and the tractor's conspicuity devices enabled approaching drivers to sufficiently observe the tractor, a reasonable jury could conclude that Seamster was not contributorily negligent. The court will therefore deny Defendants' motion for summary judgment as it relates to whether Seamster was contributorily negligent.

## IV.   CONCLUSION

For the above reasons the court will deny Defendants' motion for summary judgment. (ECF No. 37.) The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 15th day of June, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Defendants' expert Dr. Chris Monk defines "conspicuity" as "the ability for a given stimulus to be readily observable[.]" (*See* ECF No. 49-2, at 11.) Whelan's report provides an illustration highlighting the tractor's conspicuity devices, which includes labels for "Flashing Warning Lights," "SMV Emblem," and "Taillights." (*See* ECF No. 36-1, at 74.)